NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0178-22

21ST CENTURY MEDIA LLC,

 Plaintiff-Appellant,

v.

EWING TOWNSHIP and KIM J.
MACELLARO, RMC, in her
capacity as Municipal Clerk and
Records Custodian for EWING
TOWNSHIP,

 Defendants-Respondents.

_____

Argued October 18, 2023 – Decided February 13, 2024

Before Judges Currier, Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0801-22.

CJ Griffin argued the cause for appellant (Pashman Stein Walder Hayden, attorneys; CJ Griffin, on the briefs).

Michael A. Cedrone argued the cause for respondents (Stevens & Lee, attorneys; Maeve Ellen Cannon, Patrick D. Kennedy, and Michael A. Cedrone, of

counsel and on the briefs; Catherin MacDuff, on the briefs).

Dillon Scott Reisman argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (American Civil Liberties Union of New Jersey Foundation, attorneys; Dillon Scott Reisman, Alexander R. Shalom, and Jeanne M. LoCicero, on the brief).

Jeremy Adam Chase (Davis Wright Tremaine LLP), attorney for amicus curiae Reporters Committee for Freedom of The Press & 20 Media Organizations.

PER CURIAM

Plaintiff 21st Century Media LLC is a media corporation that owns and publishes The Trentonian newspaper. We consider whether plaintiff is entitled to the internal affairs (IA) reports for conduct involving police officers that predated an incident for which the officers were later indicted. Because we conclude the trial court did not properly apply the balancing test enunciated in Rivera v. Union County Prosecutor's Office, 250 N.J. 124 (2022), we reverse the court's order denying the production of the records and remand for an in camera review and proper analysis of the IA reports.

I.

In January 2018, plaintiff learned several Ewing Township police officers may have used excessive force during the arrest of a sixteen-year-old suspect on

A-0178-22

January 5. Plaintiff filed a request with defendants under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law, seeking production of the use of force records (UFR). After defendants denied the request, plaintiff filed a complaint alleging violations of OPRA and the common law. The trial court dismissed the complaint. On appeal, we reversed, stating that "when police employ force against a minor charged as a delinquent, redaction of his or her name on the UFR satisfies both the public's right to access important information regarding police conduct and a juvenile's right to privacy, which is mandated by statute and court rule." Digit. First Media v. Ewing Twp., 462 N.J. Super. 389, 393 (App. Div. 2020).

While the litigation was pending, the Ewing Township Police Department (ETPD) conducted an IA investigation and concluded it did not "substantiate any serious misconduct" or "result in any major discipline against the officers involved, although minor discipline was handed down." The New Jersey Office of the Attorney General and the Mercer County Prosecutor's Office also reviewed the arrest and did not file criminal charges against the officers.

In 2019, Ewing Township police officer Lalena Lamson filed a whistleblower lawsuit against ETPD, which included allegations pertaining to the January 5 arrest. She alleged she was retaliated against for reporting to the

3

Attorney General's office "that several officers repeatedly kicked snow" in the teenage suspect's face "and shoved his head down in the snow using their feet." She further alleged additional illegal conduct and that "to her knowledge no officer was ever disciplined as a result of this incident." The lawsuit was settled in 2021.

Following this court's ruling in 2020, defendants produced a single UFR that stated police officer Kevin J. Hoarn used a "compliance hold" against the teenage suspect and that the suspect "resisted police officer control."

On November 19, 2021, the United States Attorney's Office announced that Ewing Township police officers Matthew Przemieniecki, Michael Delahanty, and Justin Ubry "were indicted by a grand jury on civil rights charges for their roles in assaulting a minor victim during the course" of the January 5 arrest. According to the indictment, "more than a dozen police officers responded to [the] report of a" car theft. While the minor suspect was handcuffed and laying on his stomach on the ground, officers proceeded to use their boots to step on the suspect's head, pressing his face into the snow and kicking snow in his face. The indictment further stated the suspect did not resist the officers at any time while on the ground.

A-0178-22

Thereafter, plaintiff requested the entire IA files for officers Delahanty, Przemieniecki, and Ubry under OPRA and the common law right of access. Defendants denied the request, stating "the law establishes that balance of interests favors non-disclosure under the common law while there is a pending criminal proceeding."

On March 14, 2022, our Supreme Court determined that IA records are accessible under the common law when the need for disclosure outweighs the need for confidentiality after consideration of certain factors. Rivera, 250 N.J. at 135. Thereafter, plaintiff renewed its public records request under the common law, seeking all IA reports concerning the three indicted police officers from January 1, 2010 to the present time.

Defendants again denied plaintiff's request. The denial letter stated:

> Upon review, the Township has determined, despite the public interest in the subject matter, that the balance of interests favors non-disclosure at this time.
>
> . . . .
>
> The Township recognizes that, "[i]n general, the public has an interest in the disclosure of internal affairs reports . . . ." However, the law establishes that the public interest in the misconduct alleged here, which is the subject of a pending criminal proceeding . . . does not outweigh the rights of [the officers] to a fair and impartial trial, and the presumption of innocence and

> the due process of law, which are the basic ten[e]ts of our criminal justice system.

(first alteration in original) (citations omitted).

Plaintiff filed a verified complaint in lieu of prerogative writs seeking access to the IA reports for the indicted police officers under the common law right of access. On August 17, 2022, the trial court issued an order granting plaintiff access to the IA records relating to the January 5, 2018 arrest, but denying access to all of the IA reports for the officers stemming from January 1, 2010 to the present. In a written opinion, the court considered the factors outlined in Rivera and Loigman v. Kimmelman[1] and found the public's interest outweighed confidentiality concerns regarding the January 5 IA reports.

However, in considering the request for the IA reports dating back to 2010, the trial judge cited only to Rivera and found the factors weighed in favor of confidentiality because the record did not establish "the indicted officers engaged in 'repeated misconduct.'" The court also denied plaintiff's request for attorney's fees, finding they were not authorized under New Jersey caselaw, the court rules, or any applicable law. On August 26, 2022, defendants complied

---

[1] 102 N.J. 98 (1986).

with the trial court's order and produced the IA reports for the three officers relating to the January 5 arrest.

In January 2023, we granted in part plaintiff's motion to supplement the record with the September 21, 2022 order from the United States District Court, District of New Jersey dismissing the federal indictment against officer Ubry.[2] We also permitted the American Civil Liberties Union of New Jersey (ACLU) and the Reporters Committee for Freedom of the Press, along with twenty media organizations (collectively, Reporters Committee), to appear as amici curiae.

II.

On appeal, plaintiff contends the trial court erred in denying its request for the entire IA files for the indicted officers.[3] The amici support plaintiff's position. In addition, the ACLU contends the trial court ignored the implication of the broad systemic concerns the IA reports may reveal about ETPD's IA

---

[2] In November 2023, counsel informed the court that officers Delahanty and Przemieniecki agreed to pretrial diversion. The indictments against them were to be dismissed in January 2024 upon compliance with certain conditions.

[3] Plaintiff also sought counsel fees in its direct appeal. However, it withdrew that contention after the Supreme Court issued its opinion in Gannett Satellite Information Network, LLC v. Township of Neptune, 254 N.J. 242, 261-65 (2023), finding counsel fees cannot be awarded for a request for records under the common law right of access.

procedures. The Reporters Committee add that plaintiff's investigation and reporting help the public evaluate and reform oversight boards.

Our review of a trial court's legal conclusions with respect to whether access to public records is appropriate under the common law right of access is de novo. N. Jersey Media Grp., Inc. v. Bergen Cnty. Prosecutor's Off., 447 N.J. Super. 182, 194 (App. Div. 2016).

Plaintiff argues the trial court erred in denying it access to all IA records for each indicted officer dating back to January 1, 2010, because it failed to conduct the proper common law balancing test under Rivera and Loigman. Defendants contend the court correctly denied plaintiff's request because the reports are highly confidential and prejudicial to the pending federal criminal proceedings. Defendants further argue that the court did not need to do a balancing test under Rivera and Loigman because plaintiff did not first establish a heightened interest in the subject matter, which is required before the court undertakes a balancing test.

Individuals and entities may request the disclosure of public records under either OPRA or the common law. The common law right of access is more wide-ranging than OPRA as "the requestor is not limited to the categories of information subject to disclosure under OPRA." Gannett, 254 N.J. at 249.

8

However, "the showing a requester must make to gain access is greater than that required under OPRA." N. Jersey Media Grp., 447 N.J. Super. at 210.

The Rivera Court determined that IA files are exempt from disclosure under OPRA. 250 N.J. at 141-43. Here, plaintiff sought the IA records under the common law. Those records may be disclosed if (1) the records are common-law public documents; (2) the requestor has "'an interest in the subject matter of the material'"; and (3) the requestor's right to access outweighs "'the State's interest in preventing disclosure.'" Id. at 143-44 (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 578-79 (2017)).

In Rivera, the Court found that IA reports are public records under the common law because they contain an objective summary of the case, "'conclusions for each allegation, and recommendations for further action.'" Id. at 142 n.1 (quoting Off. of the Att'y Gen., Internal Affairs Policy & Procedures § 9.1.1 (rev. 2021)). The parties do not dispute the first requirement is met.

Under the second requirement, the "interest" of the party seeking the records can be "'a wholesome public interest or a legitimate private interest.'" Higg-A-Rella, Inc. v. Cnty. of Essex, 141 N.J. 35, 47 (1995) (quoting Loigman, 102 N.J. at 112). The Supreme Court has found that "[t]he press's role as 'the eyes and ears of the public' generally is sufficient to confer standing on a

newspaper that seeks access to public documents." Home News v. State, Dep't of Health, 144 N.J. 446, 454 (1996) (quoting S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 496-97 (1991)). In its written opinion, the trial court stated that defendants did not dispute plaintiff's interest in the records, and it proceeded to a consideration of the balancing test.

In its appellate brief, defendants do not concede plaintiff met its burden regarding the second requirement. Although defendants recognize plaintiff may have a "general interest" in the records, they contend that is not sufficient. Instead, defendants assert plaintiff "must show a 'particularized need that outweighs the public interest in confidentiality of the investigative proceeding.'" Wilson v. Brown, 404 N.J. Super. 557, 583 (App. Div. 2009) (quoting McClain v. Coll. Hosp., 99 N.J. 346, 351 (1985)).

Defendants' assertion lacks merit. As stated, the Supreme Court has previously determined a newspaper has standing under the common law right of access to request public documents. Home News, 144 N.J. at 454. Moreover, in Rivera, the Court stated, "In general, the public has an interest in the disclosure of [IA] reports in order to hold officers accountable, to deter misconduct, to assess whether the [IA] process is working properly, and to foster

10

trust in law enforcement." 250 N.J. at 147. Plaintiff has established the second requirement.

As the first two requirements are satisfied, defendants were required to demonstrate that its need for confidentiality outweighed plaintiff's need for disclosure. In Rivera, the Court provided guidance in outlining factors a court should consider when evaluating the heightened interest for public disclosure:

> (1) the nature and seriousness of the misconduct. Serious misconduct gives rise to a greater interest in disclosure. For example, misconduct that involves the use of excessive or deadly force, discrimination or bias, domestic or sexual violence, concealment or fabrication of evidence or reports, criminal behavior, or abuse of the public trust can all erode confidence in law enforcement and weigh in favor of public disclosure;
>
> (2) whether the alleged misconduct was substantiated. Unsubstantiated or frivolous allegations of misconduct present a less compelling basis for disclosure;
>
> (3) the nature of the discipline imposed. Investigations that result in more serious discipline, like an officer's termination, resignation, reduction in rank, or suspension for a substantial period of time, favor disclosure.
>
> (4) the nature of the official's position. Wrongdoing by high-level officials can impair the work of the department as a whole, including the functioning of the [IA] process; and

11

(5) the individual's record of misconduct. The public's interest in disclosure extends to all officers— regardless of rank—whose serious or repeated misconduct may pose a danger to the public.

[Id. at 148 (italicization omitted) (citation omitted).]

The Rivera Court confirmed that a court should continue to assess the following factors established under Loigman in determining the interest in confidentiality:

(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government;

(2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed;

(3) the extent to which agency self-evaluation, program improvement, or other decision[]making will be chilled by disclosure;

(4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers;

(5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and

(6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.

[Id. at 144 (quoting Loigman, 102 N.J. at 113).]

12

Once the balancing test is completed, "[IA] records can and should be disclosed under the common law right of access when interests that favor disclosure outweigh concerns for confidentiality." Id. at 135.

Here, in considering the request for the disclosure of the IA reports regarding the January 5 arrest, the court performed a comprehensive analysis of the Rivera and Loigman factors and found the balancing test favored disclosure of those specific IA reports.

However, the trial court did not undertake the same analysis prior to denying plaintiff access to all IA reports from 2010 to the present for each indicted officer. The court did not analyze the Rivera or Loigman factors as it did previously. Although the court found there was "a heightened public interest," it concluded that the "record [did] not support a wholesale release of all records related to the officers. Nothing in the record establishe[d] or suggest[ed] that the indicted officers engaged in 'repeated misconduct.'"

The trial court did not have the IA records. There is no basis for the conclusion that the records did not show "repeated misconduct." The only information regarding the records was in the certification submitted by the ETPD Chief of Police, Albert Rhodes. The Chief stated his review of the IA records revealed

an array of sensitive and confidential content, including witness information and statements, internal processes, deliberations and findings concerning the January 5 [i]ncident. They contain similar information for a range of other unrelated matters over a lengthy period of time, ranging from internal employee disputes, to personnel disputes, such as shift disputes, to various citizen complaints, including investigations, reports and resolutions of same.

. . . .

. . . [T]he [r]equested IA [r]eports address numerous matters that were ultimately dismissed as unsubstantiated or frivolous.

That opinion was not a sufficient ground upon which the court could make a balancing test conclusion.

We reverse the portion of the August 17, 2022 order denying plaintiff's request for the complete file of all IA reports of the indicted officers from January 2010 to the date of the request. Defendants shall provide the court with the complete IA files of the indicted officers from January 2010 to March 2022. The court shall conduct an in camera review of the IA records and perform the required balancing test of the competing interests in considering the <u>Rivera</u> and <u>Loigman</u> factors. Thereafter, if the court finds the need for disclosure outweighs the need for confidentiality, the court shall order defendants to provide plaintiff with appropriately redacted IA reports.

14

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0178-22